UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61231-CIV-UNGARO

JOHN RICHARD MAREK,

    Petitioner,

v.

WALTER A. McNEIL, Secretary,
Florida Dept. of Corrections, and
BILL McCOLLUM, Attorney General,

    Respondents.
_____/

**ORDER DISMISSING PETITION FOR FEDERAL**
**HABEAS RELIEF AND DENYING MOTION FOR STAY OF EXECUTION**

THIS CAUSE is before the Court upon Petitioner's Motion for Stay of Execution and Petition for Writ of Habeas Corpus by a Person in State Custody, filed on August 11, 2009. Respondents filed their Response and Motion to Dismiss and Opposition to Any Stay Requested on August 12, 2009. The Governor of the State of Florida has scheduled Petitioner's execution for Wednesday, August 19, 2009 at 6:00 p.m.

THE COURT has given expedited consideration to the Motion and Petition in light of the impending execution and the limitations on district courts' jurisdiction contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(b). Having considered the Petition, Motion, and record, and being otherwise fully advised in the premises, the Motion is denied and the Petition is dismissed for lack of subject matter jurisdiction.

1

**Background**

Petitioner, a Florida prison inmate, was sentenced to death for first-degree murder, kidnaping, attempted burglary, and battery in the 1983 death of Adella Marie Simmons. The long procedural history of Petitioner's post-conviction challenges to his conviction and sentence is set forth in a recent Florida Supreme Court case, *Marek v. State*, 8 So. 3d 1123 (Fla. 2009). Relevant for present purposes is that, on May 11, 1989, the Florida Supreme Court affirmed the denial of Petitioner's first motion for post-conviction relief under Florida law and denied his petition for habeas corpus;[1] on October 10, 1989, Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court, Southern District of Florida;[2] on October 1, 1990, the federal district court denied relief; and on August 14, 1995, the Eleventh Circuit affirmed the district court's decision.[3]

On April 20, 2009, the Governor of Florida signed a warrant setting Petitioner's execution for May 13, 2009. The Florida Supreme Court imposed a stay of execution on May 11, 2009, which it then lifted in its July 16, 2009 decision, *Marek v. Florida*, -- So. 3d -- , 2009 WL 2045416 (Fla. July 16, 2009). The Governor has rescheduled Petitioner's execution for August 19, 2009 at 6:00 p.m.

Now, eight days before his scheduled execution, Petitioner has filed his second federal petition for habeas relief. Petitioner argues that his conviction was obtained in violation of, and

---

[1]   *Marek v. Dugger,* 547 So. 2d 109 (Fla. 1989).

[2]   *Marek v. Dugger*, Case No. 89-6824-CIV-Gonzalez (S.D. Fla. Oct. 10, 1990).

[3]   *Marek v. Singletary*, 62 F.3d 1295 (11th Cir. 1995), *cert. denied*, 519 U.S. 838 (1996).

his death sentence violates, the Fifth, Sixth, Eighth, and Fourteenth Amendments. (Petition 16-17.)  His claims rest on two grounds.  First, Petitioner asserts that the process by which the Governor chose to sign his death warrant on April 20, 2009, was unconstitutional where (a) the State Attorney's Office was in contact with the Governor's Office and the Parole Commission without Petitioner's counsel's knowledge before the Governor signed the warrant, and (b) the Governor did not employ any standard when choosing between signing Petitioner's death warrant and that of any of the other death row inmate.[4]  (Petition 20-21.)  Second, Petitioner argues that his death sentence is unconstitutional because the Florida Supreme Court's application in 1989 of *Strickland v. Washington*, 566 U.S. 668 (1984), to his ineffective assistance of counsel claim was contrary to the *Strickland* standard as "redefined" in *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Wiggins v. Smith*, 539 U.S. 510, 527 (2003); and *Rompilla v. Beard*, 545 U.S. 374 (2005). (Petition 25-26.)  Petitioner argues that the Florida courts have refused to give him the benefit of the "proper" redefined *Strickland* standard.  (Petition 25, 49-51.)

### Legal Analysis

Pursuant to the AEDPA, "[b]efore a second or successive [habeas] application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order

---

[4] Petitioner had a clemency hearing with appointed counsel in 1988. (Petition 22.) His instant claim "concerns the warrant signing power that Florida law places with the Governor, and the process by which the Governor used that power to sign Mr. Marek's death warrant on April 20, 2009." (Petition 23.)  Petitioner states that this claim was presented to the Florida courts, but that the Florida Supreme Court ruled that "the manner in which a governor exercised his clemency and warrant signed [sic] powers were not subject to judicial review and would not be second guessed by the Florida Supreme Court." (Petition 25 (citing *Marek v. State*, 2009 WL 2045416 at *11-12).)  Petitioner argues that this ruling was contrary to or an unreasonable application of well-established law, citing such cases as *Furman v. Georgia*, 408 U.S. 238 (1972) and *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998). (*Id*.)

authorizing the district court to consider the application."[5]  28 U.S.C. § 2244(b)(3)(A).  Federal courts strictly apply this permission requirement, and district courts lack subject matter jurisdiction to consider second or successive habeas petitions where the requirement has not been met.  *See, e.g., Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007); *Hubbard v. Campbell*, 379 F.3d 1245, 1247 (11th Cir. 2004) (affirming district court's dismissal of an "amended" habeas petition where petitioner did not first seek permission from the Eleventh Circuit to file a second or successive petition); *Gilreath v. State Bd. of Pardons & Paroles*, 273 F.3d 932, 933-34 (11th Cir. 2001) (holding district court lacked subject matter jurisdiction to grant a death row inmate relief under 42 U.S.C. § 1983 because petitioner was essentially seeking habeas corpus relief and had not received permission from the Eleventh Circuit to file a second or successive habeas petition).

Petitioner acknowledges that he has not obtained permission from the Eleventh Circuit before filing his Petition with this Court and that he normally would be required to do so. (Petition 1.)  The only argument Petitioner offers for why the clear statutory command of 28 U.S.C. § 2244(b)(3)(A) does not apply in this case is that his Petition is not a second or successive application under the rationale articulated by the United States Supreme Court in *Panetti v. Quarterman*, 551 U.S. 930 (2007).

The Supreme Court held in *Panetti* that the statutory bar on filing second or successive habeas petitions does not apply to the "unusual" claim of incompetency to be executed because

---

[5] The phrase "second or successive" is not defined in 28 U.S.C. § 2244.

4

such a claim is not ripe until the execution date has been established.[6]  551 U.S. at 945-47 (2007).  Subsequent to *Panetti*, the Eleventh Circuit decided *Tompkins v. Secretary of the Department of Corrections*, 557 F.3d 1257 (11th Cir. 2009), *cert. denied,* 129 S.Ct. 1305 (2009).  In *Tompkins*, the Eleventh Circuit stated that the "*Panetti* case only involved a *Ford* [incompetency] claim, and the Court was careful to limit its holding to *Ford* [incompetency] claims."  *Id.* at 1259.  Although the Eleventh Circuit suggested in *Tompkins* that *Panetti*'s holding may extend further to encompass other claims that become ripe only after the first petition is filed, it did not ultimately hold as much and later emphasized in an unpublished decision that the *Panetti* exception is a "narrow" one.  *Jeremiah v. Terry*, 322 Fed. Appx. 842, 844 (11th Cir. 2009) (unpublished decision).

Although the meaning of "second or successive" in the AEDPA after *Panetti* is not entirely clear, these cases strongly compel the conclusion that the Court must apply the plain language of 28 U.S.C. § 2244(b) and deny Petitioner the relief he requests.[7]  As the Supreme Court itself recognized, "judgments about the proper scope of the writ are normally for Congress to make."  *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (internal quotations and citation omitted).  Congress has expressly established a "gatekeeping" mechanism for the consideration of second

---

[6] The Supreme Court stated twice in *Panetti* that the exception articulated therein was inapplicable in the "usual" case of a second or successive habeas petition.  *See id.* at 945 ("We conclude . . . that Congress did not intend the provision of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here . . . ."); *Id.* at 947 ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar.").

[7] Section 2244 provides Petitioner an adequate mechanism for obtaining review of a federal claim discovered after an earlier federal petition; it simply transfers from the district court to the court of appeals the function of the initial review of that second or successive habeas petition.  *See Felker*, 518 U.S. at 664.

or successive habeas corpus applications in federal courts. *See Stewart v. Matinez-Villareal*, 523 U.S. 637, 641 (1998). While *Panetti* recognized that there may be exceptions to 28 U.S.C. § 2244(b)'s clear command, its holding was limited to the "unusual" second or successive habeas petition that raises an incompetency claim to avoid a scheduled execution.[8]  551 U.S. at 945. Petitioner does not assert such an incompetency claim.

However, even if the Court were to find that the *Panetti* exception applies to a broader class of claims–such as Petitioner's claim regarding the decision-making process by which the Governor chose to sign the death warrant–it would nonetheless deny Petitioner's request for relief.[9]  Assuming as true Petitioner's argument that this claim did not ripen until April 20, 2009,

---

[8] As the Eleventh Circuit stated when considering *Panetti*, the "ripeness" exception articulated in that case applies to these types of incompetency claims because such claims <u>cannot exist</u> when the execution is years away. *Tompkins*, 557 F.3d at 1260. Put another way, a claim that a petitioner lacks the requisite competency to be executed need not be raised in an initial habeas petition because it will never be ripe at that time. *Id.* By contrast, Petitioner's claims regarding the "process" which led the Governor to sign the death warrant well may have been ripe at the time of his initial federal habeas petition. Although he argues that his claim did not ripen until 2009, Petitioner does not state that the Governor's decision-making process was any different than before the filing of his first federal habeas petition in 1990. Instead, Petitioner states in footnote eight of his Petition that the Florida procedures concerning clemency and the expiration of death warrants have changed since his 1988 clemency hearing; Petitioner does not actually say anything about how, if at all, the process by which a Florida governor chooses to sign a death warrant has changed.

[9] The Court does not consider whether Petitioner's *Strickland* claim would succeed because his Petition is so clearly "second or successive" insofar as that claim is concerned. *See Marek v. Singletary,* 62 F.3d 1295 (11th Cir. 1995) (addressing Petitioner's *Strickland* claim in his first federal petition for habeas relief). Petitioner argues that the Florida Supreme Court's 1989 construction of *Strickland* was erroneous and contrary to later Supreme Court decisions: *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Rompilla v. Beard*, 545 U.S. 374 (2005). (Petition 25-26.) Petitioner argues that the Florida Supreme Court's "refusal" in 2009 to afford him the benefit of these three subsequent Supreme Court decisions constitutes a denial of his Sixth Amendment right to effective assistance of counsel, and, therefore, his death sentence violates the Eighth and Fourteenth Amendments. (*Id.* at 27, 50.) He further argues that this claim only became ripe upon the Florida Supreme Court's refusal

6

Petitioner would not be entitled to relief under 28 U.S.C. § 2254(d).  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Florida Supreme Court rejected Petitioner's argument that the process by which the Governor determined to sign his death warrant was unconstitutional.  *Marek v. Florida*, -- So. 3d -- , 2009 WL 2045416, *11-12 (Fla. July 16, 2009).  It noted that Petitioner failed to provide any authority supporting his claim, and, that although the Supreme Court has held some minimal procedural due process requirements apply to clemency proceedings, the Governor is not required to follow any specific procedures or criteria when signing warrants.  *Id.* at *12 (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998)).[10]

---

to apply the "proper" *Strickland* standard–that is, the standard as refined by *Rompilla*, *Wiggins*, and *Williams*.  (*Id.* at 51.)

It is well-established that *Rompilla*, *Wiggins*, and *Williams* did not set forth a new rule of law.  *See*, *e.g.*, *Newland v. Hall*, 527 F.3d 1162, 1197 (11th Cir. 2008).  These three cases only represent an "application of the principles elucidated in *Strickland* to a novel set of facts." *Id.*  Thus, these three decisions did not give rise to a new "ripe" *Strickland* claim.  The law is not static, and standards are constantly subject to refinement.  If the Court were to find that new claims became ripe every time a Supreme Court decision refined a standard, then the underlying principles of the AEDPA– comity, finality, and federalism–would be eviscerated.  Indeed, the Eleventh Circuit has denied permission to file a second or successive habeas petition on the argument that *Rompilla* announced a new rule of law with respect to ineffective assistance of counsel claims.  *In re Hutcherson*, 468 F.3d 747 (11th Cir. 2006).

[10]   This Court does not wholly embrace the Florida Supreme Court's view of *Woodard*.  As this Court understands *Woodard*, the Supreme Court held only that under some circumstances some minimal due process requirements can attach to clemency proceedings. Additionally, the Court notes that Petitioner's claims regarding the process by which the Governor arrived at his decision to sign the warrant do not, as a technical matter, arise out of a

The Florida Supreme Court's decision was not contrary to, nor did it unreasonably apply, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In *Ohio Adult Parole Authority v. Woodard*, the Supreme Court recognized that executive discretion to pardon or commute sentences has traditionally been non-reviewable in the courts. 523 U.S. at 276. Accordingly, the Supreme Court held, *inter alia*, that Woodard did not have a life or liberty interest protected by the due process clause in clemency proceedings conducted pursuant to Ohio law. *Id.* at 278. The Supreme Court also recognized in *Olim v. Wakinekona* that a protected liberty interest arises in connection with the executive branch decision to transfer a prisoner to another institution only where the state has placed substantive limitations on executive discretion. 461 U.S. 238, 249 (1983).

In Florida, the clemency process is derived solely from the Florida Constitution and is strictly an executive branch function. *Parole Comm'n v. Lockett*, 620 So. 2d 153, 154-55 (Fla. 1993). The Florida Supreme Court has interpreted the Florida Constitution to mean that the "people of [Florida] chose to vest sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace." *Sullivan v. Askew*, 348 So. 2d 312, 315 (Fla. 1977).[11] Accordingly, under Federal law, Florida has not created a protected interest in life or liberty with respect to clemency proceedings; and, assuming such proceedings can be analogized to the *ex*

---

clemency proceeding. Nonetheless, the Court construes Petitioner's claims regarding the Governor's decision to sign the warrant as being analogous to a claim that the clemency process is unconstitutional.

[11] Florida's Rules of Executive Clemency (rev. 2007) provide in pertinent part that the "Governor has unfettered discretion to deny clemency at any time, for any reason." The Rules are available Office of Executive Clemency's website: https://fpc.state.fl.us/ExecutiveClemencyInfo.htm (last accessed on Aug. 13, 2009).

*parte* contacts[12] and consideration that preceeded the Governor's issuance of the death warrant, Petitioner cannot maintain a due process claim arising from the process of which he complains. *See Woodard,* 523 U.S. at 278 ("Since the Governor retains complete discretion to make the final decision [regarding clemency], . . . the State has not created a protected interest.").[13]

Additionally, to the extent that Petitioner's claim is based on the arbitrary nature of the process by which the Governor determined to sign the death warrant, the Court finds that it too must fail.[14] In *Woodard*, the Supreme Court recognized that a capital defendant has a "residual

---

[12] The Court assumes as true Petitioner's allegation that these contacts occurred.

[13] To the extent that Petitioner's claim is an equal protection claim, the Court also finds that it fails because Petitioner has neither asserted nor suggested that Florida has adopted a rule regarding clemency and the warrant-signing process that has "a special impact on less than all persons subject to its jurisdiction[.]" *New York Transit Auth. v. Beazer*, 440 U.S. 568, 587-88 (1979); *see also Woratzeck v. Stewart*, 118 F.3d 648, 652 (9th Cir. 1997) (rejecting capital defendant's contention that his execution violates the equal protection clause because it was scheduled before the executions of other death row inmates).
Additionally, the Court notes that to the extent that Petitioner's claim rests on the theory that the *ex parte* contacts created an appearance of impropriety, the Eleventh Circuit has stated that such appearances do not necessarily violate the Federal Constitution's due process clause in a clemency proceeding. *Gilreath,* 273 F.3d at 934.

[14] The Ninth Circuit considered similar claims from a capital defendant in *Woratzeck v. Stewart*, 118 F.3d 648 (9th Cir. 1997). There, the defendant applied for permission with the Ninth Circuit to file a second or successive habeas petition on the grounds that, *inter alia*, his execution violated the Eighth Amendment because "the issuance of his death warrant, as opposed to other more violent death row cases, is 'freakish and wanton' in violation of *Furman v. Georgia*," 408 U.S. 238 (1972). 118 F.3d at 652. The defendant also argued that the "involvement as prosecutors in the clemency hearing of two of his prior lawyers presents a constitutional conflict of interest." *Id.* at 652-53. The Ninth Circuit denied him permission to file a second or successive habeas petition with the district court. *Id.* at 653. As to the first claim, the Ninth Circuit held that being "singled out" for the scheduling of an execution did not violate the Eighth Amendment where his death sentence itself did not violate the Eighth Amendment; the state "must establish some order of execution." *Id.* at 652. As to the second claim, the Ninth Circuit held that because there is no constitutional right to clemency under *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458 (1981), his clemency claim was not cognizable in a successive petition under the AEDPA. *Id.* at 653. *Accord Spivey v. State Bd. of Pardons & Paroles*, 279 F.3d 1301 (11th Cir. 2002) (stating that defendant's challenges to

life interest" after his sentencing, but that he "cannot use his interest in <u>not being executed</u> in accord with his sentence to challenge the clemency determination by requiring [certain] procedural protections . . . ." 523 U.S. 272, 281 (emphasis added). The Supreme Court also recognized in *Woodard* that where a governor is afforded broad discretion by the state, then "<u>[u]nder any analysis</u>, the governor's executive discretion need not be fettered by the types of procedural protections sought by respondent." *Id.* at 282 (emphasis added).

After consideration of these constitutional principles, and in the absence of any other authority, the Court finds that the Florida Supreme Court's decision rejecting Petitioner's claim that the Governor's decision to issue the death warrant was unconstitutional is not in conflict with clearly established federal law as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the Petition is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. It is further

ORDERED AND ADJUDGED that the Motion for Stay is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of August, 2009.

*[signature: Ursula Ungaro]*
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

---

clemency procedures do not challenge the conviction and sentence on the underlying offense and, therefore, cannot satisfy requirements under 28 U.S.C. § 2244(b)(2)).